J-S18022-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : | |
| JUSTIN BUCHANAN | : | |
| Appellant | : | No. 2969 EDA 2019 |

Appeal from the Judgment of Sentence Entered August 21, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0008378-2015

BEFORE: PANELLA, P.J., McCAFFERY, J., and COLINS, J.[*]

MEMORANDUM BY McCAFFERY, J.: **FILED JULY 23, 2021**

Justin Buchanan (Appellant) appeals from the judgment of sentence[1] entered in the Philadelphia Court of Common Pleas, following his jury trial convictions of third-degree murder[2] and related offenses. Appellant contends the trial court abused its discretion when it: (1) admitted prior consistent

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] Appellant purported to appeal from the September 30, 2019, order, denying his post-sentence motion. However, the appeal lies properly from the judgment of sentence, which is made final by the denial of post-sentence motions. **See Commonwealth v. Rivera**, 238 A.3d 482, 489 n.1 (Pa. Super. 2020). We have corrected the above appeal paragraph accordingly.

[2] 18 Pa.C.S. § 2502(c).

statements by a Commonwealth witness; and (2) sentenced Appellant above the guidelines.[3]  We affirm.

Appellant's convictions arise from his shooting and killing Robert Reynolds (Victim) on October 18, 2014, between 3844 and 3846 West Girard Avenue, Philadelphia.  Appellant's family lived at 3830 West Girard Avenue, and the Victim lived nearby at 3836 West Girard Avenue.

At trial, the Commonwealth presented the following witness testimony. Jordan Buchanan, Appellant's brother, had a party at his family's house at 3830 West Girard Avenue, Philadelphia.  During the party, the Victim was filming videos.  Some of the individuals at the house asked the Victim to stop filming them.  The Victim complied and walked away.  *See* N.T. Jury Trial, 4/3/19, at 163-64.

Later in the night, the Victim returned to Appellant's family's house with William Nobblen and began filming outside.  The individuals at the house became agitated that the two men were filming, resulting in a physical altercation between Nobblen and Markeese Oliver.  N.T., 4/3/19, at 165-67. Oliver's brother, Malik Coyett, separated them.  *Id.* at 193.  After the altercation, everyone began dispersing.  Oliver and Coyett later told police that as they were attempting to get back into the house, they saw Appellant

---

[3] Although Appellant raised this sentencing issue in his Pa.R.A.P. 1925(b) statement, on appeal he abandons the issue.  *See* Appellant's Brief at 9.

shooting a gun in the street.[4]  *Id.* at 195; N.T. Jury Trial, 4/2/19, at 193.  The police were then called to the scene, where they found the Victim shot and laying "lifeless" on the pavement.  N.T., 4/2/19, at 119.

Appellant was charged with, *inter alia*, homicide generally, carrying a firearm without a license, carrying a firearm on public streets in Philadelphia, and possession of an instrument of crime.[5]  The matter proceeded to a six-day jury trial on April 1, 2019.  The parties stipulated that Appellant did not have a valid license to possess a firearm in Pennsylvania.  N.T. Jury Trial, 4/5/19, at 111-12.  The Commonwealth presented witness testimony from individuals who attended the party and Spencer Hayes, each of whom were with the Victim at some point on the night of the shooting.  The Commonwealth also played a video filmed before the shooting, in which Appellant had a firearm in his hand.  N.T., 4/3/19, at 168-74.

As Appellant's issue focuses on the trial testimony of Spencer Hayes, we consider it in detail.  Hayes was a caretaker for the Victim's grandmother and lived with the Victim and his family at 3836 West Girard Avenue. N.T. Jury Trial, 4/4/19, at 168, 172.  On the night of the shooting, Hayes put the Victim's

---

[4] Although Oliver and Coyett initially told police they witnessed Appellant firing a gun in the street, at trial they recanted these statements.  The Commonwealth then introduced their prior statements to police. **See** N.T, 4/3/19, at 195, N.T., 4/2/19, at 193.

[5] 18 Pa.C.S. §§ 6106, 6108, 907(a), respectively.

grandmother to bed at 8:00 p.m. and walked to a local convenience store. *Id.* at 173. While walking back home, around 8:00 to 8:15 p.m., Hayes passed Appellant's family's house and saw a small group of people, including Appellant, outside arguing. Hayes overheard Appellant say, "[Y]ou all need to get this mess from in front of my mom's house." *Id.* at 180.

After Hayes arrived home, the Victim entered the house, holding a camera. Hayes asked the Victim if he had "anything to do with that [sic]," and the Victim replied no. N.T., 4/4/19, at 185. Hayes told the Victim to "stay in," and the Victim went upstairs. *Id.* Hayes went down to the basement, but his girlfriend, who was also at the house, told him "somebody just went out the front door." *Id.* at 185. Hayes then heard someone call out the Victim's name and gunshots. *Id.* at 186. Appellant's family came to Hayes' door and told him "somebody is down on the sidewalk and they think it's" the Victim. *Id.* at 187. Hayes called the Victim's father, but he did not answer. *Id.* at 186. Police officers ordered Hayes to stay inside; officers subsequently came inside and searched the home. *Id.* at 189. Four hours after the shooting, Hayes went to the police station, where he was asked questions about the Victim. *Id.* at 191.

At trial, the Commonwealth introduced Hayes' prior signed statement to police, given on the night of the shooting. The Commonwealth asked Hayes whether he remembered being interviewed by police about the shooting and

providing a statement in order to authenticate the document. N.T., 4/4/19, at 199-200. At this juncture, Appellant's counsel objected as follows:

> [Commonwealth]: I want to take you down to the first line there. It says interviewee was advised that this is a non-custodial interview and he is free to leave at any time.
>
> Did I read that correctly?
>
> [Hayes]: Yes, you did. That is what is up there.
>
> Q: The next question is –
>
> **[Defense Counsel]: I am going to object unless there is something that was inconsistent about his testimony.**
>
> The Court: Overruled for now.

*Id.* at 198 (emphasis added). The Commonwealth continued reading the questions from the statement, including whether Hayes was under the influence of alcohol at the time he provided the statement, how far he went in school, and how well he knew the Victim. *Id.* at 200. Appellant's counsel objected again as follows:

> [Commonwealth]: Next question, do you know the victim, Robert Reynolds, and what was your answer?
>
> [Hayes:] Yes.
>
> Q. Yes. I take care of his grandmother. I call [the Victim] Wink; right?
>
> A. Right.
>
> Q. For how long have you know the victim?
>
> [**Defense Counsel:**] **Your Honor, respectfully, I am going to renew my objection. So far nothing has been inconsistent.**

The Court: Overruled.

*Id.* at 200 (emphasis added). These were the only objections Appellant's counsel made to the introduction of Hayes' police statement.

The Commonwealth then confronted Hayes with each line of his prior statement to police, which generally proceeded as follows: the first interaction Hayes had with the Victim on the night of the shooting was around 11:00 p.m. N.T., 4/4/19, at 202. The Victim was taking a dog for a walk, and returned to the house about 45 minutes later. *Id.* at 206. Hayes asked the Victim about the commotion outside, and the Victim stated he had nothing to do with it, but the Victim's friend was involved. *Id.* at 207. Hayes went downstairs, then heard gunshots and the Victim's grandmother screaming that she thought the Victim was shot. *Id.* at 209. Hayes attempted to call, on the phone, the Victim, the Victim's mother, and the Victim's father. *Id.* at 210. Afterward, a police officer knocked on the door and asked Hayes if he knew the man who was shot, to which Hayes responded no. *Id.* at 211, 213. Officers later returned and informed Hayes that a young man was shot, and Hayes responded that they "must mean [the Victim.]" *Id.* at 213-14. Thereafter, Hayes signed the statement. *Id.* at 224.

At trial, Hayes generally denied the truth of most of these prior statements, including the time of night he saw the Victim, whether there was a dog present in the house, whether Hayes called the Victim's phone after shots were fired, and whether it was Appellant's family or police officers who

informed him the Victim was shot.  N.T., 4/4/19, at 202-18.  Aside from the initial objections defense counsel raised to preliminary questions about the prior statement, Appellant did not object to any of the substantive statements.

Appellant did not testify but presented three exhibits.  N.T, 4/5/19, at 113.  The jury found Appellant guilty of murder in the third degree, carrying a firearm without a license, carrying a firearm on public streets in Philadelphia, and possessing an instrument of crime.  On August 21, 2019, the trial court imposed a sentence of 20 to 40 years' imprisonment and a consecutive five years' probation.

On August 26, 2019, Appellant filed a timely post-sentence motion, and his counsel filed a motion to withdraw from representation.  On September 30th, the trial court denied the post-sentence motion, permitted trial counsel to withdraw, and appointed new counsel.

On October 12, 2019, Appellant filed a timely notice of appeal, and complied with the trial court's order to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal.

On December 23, 2019, Appellant's current counsel, Todd Mosser, Esquire, entered his appearance in this Court as private counsel.  On June 22, 2020, this Court dismissed the appeal for failure to file a brief.  On July 31st, this Court reinstated Appellant's appeal and granted his request to file a supplemental Rule 1925(b) statement.  On August 20th, Appellant filed a timely amended Pa.R.A.P. 1925(b) statement.

On appeal, Appellant present the following issues for our review:

1. Did the trial court abuse its discretion when admitted Hayes'[ ] prior consistent statement?

2. Did the trial court err in denying Appellant's post -sentence motion for reconsideration of sentence?

Appellant's Brief at 3.

In his first issue, Appellant avers the trial court abused its discretion by overruling his objection to the introduction of Hayes' prior statement to police, when his trial testimony was **consistent** with the statement. Appellant's Brief at 8. Appellant asserts the Commonwealth improperly "went beyond authenticating the statement and asked Hayes about the substantive content of the statement." *Id.* Appellant contends that he was prejudiced by the admission of the evidence because it improperly bolstered Hayes' credibility in the eyes of the jury. *Id.* We conclude that no relief is due.

We note the relevant standard of review for challenges of abuse of discretion:

> The standard of review employed when faced with a challenge to the trial court's decision as to whether or not to admit evidence is well settled. Questions concerning the admissibility of evidence lie within the sound discretion of the trial court, and a reviewing court will not reverse the trial court's decision absent a clear abuse of discretion. Abuse of discretion is not merely an error of judgment, but rather where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will.

*Commonwealth v. Young*, 989 A.2d 920, 924 (Pa. Super. 2010) (citations omitted).

As an initial matter, we note the trial court's observation that Appellant's counsel "objected prematurely," as the objections were made while the Commonwealth was simply attempting to authenticate Hayes' prior statement. Trial Ct. Supplemental Op., 9/15/20, at 3. Appellant failed to address this issue in his brief. Nonetheless, we agree with the trial court.

Pennsylvania Rule of Appellate Procedure 302(a) states: "Issues not raised in the trial court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a). "In order to preserve an issue for review, a party must make a timely and specific objection." ***Commonwealth v. Duffy***, 832 A.2d 1132, 1136 (Pa. Super. 2003) (citations omitted). On appeal, the party's evidentiary challenge will be confined to the specific objection made before the trial court. ***Commonwealth v. Cousar***, 928 A.2d 1025, 1041 (Pa. 2007).

Here, Appellant objected while the Commonwealth was attempting to authenticate Hayes' statement through general questions about the witness' education history and whether he knew the Victim. ***See*** N.T., 4/4/19, at 198, 200. Over 23 pages of trial testimony, the Commonwealth painstakingly details each of Hayes' prior responses to police questioning, most of which were denied by Hayes. ***See id.*** at 202-25. However, Appellant failed to raise any objection to the substance of Hayes' statement, which he now challenges on appeal. Additionally, Appellant fails to cite the place in the record where he raised a timely objection. ***See*** Pa.R.A.P. 2117(c) (requiring statement of case to specify state of proceedings at which issue sought to be reviewed on

appeal was raised), 2119(e) (requiring same of argument section of appellate brief).  Accordingly, we find this issue waived.  ***See*** Pa.R.A.P. 302(a); ***Cousar***, 928 A.2d at 1041.

Nevertheless, even if Appellant properly preserved this issue, we conclude no relief is due.  Pennsylvania Rule of Evidence 801(c) defines hearsay as follows:

> **(c) Hearsay.** "Hearsay" means a statement that
>
>> (1) the declarant does not make while testifying at the current trial or hearing; and
>>
>> (2) a party offers in evidence to prove the truth of the matter asserted in the statement.

Pa.R.E. 801(c)(1)-(2).  Generally, hearsay is not admissible.  Pa.R.E. 802.  Pennsylvania Rule of Evidence 803(1), however, provides for the admission of a prior inconsistent statement:

> The following statements are not excluded by the rule against hearsay if the declarant testifies and is subject to cross-examination about the prior statement:
>
>> **(1) Prior Inconsistent Statement of Declarant-Witness**. A prior statement by a declarant-witness that is inconsistent with the declarant-witness's testimony and:
>>
>> \* \* \*
>>
>>> (B) is a writing signed and adopted by the declarant[.]

Pa.R.E. 803.1(1)(B).

This Court has explained:

> Our courts long have permitted non-party witnesses to be cross-examined on prior statements they have made when those statements contradict their in-court testimony. Such statements, known as prior inconsistent statements, are admissible for impeachment purposes. ***Commonwealth v. Brady***, . . . 507 A.2d 66, 68 ([Pa.]1986); P.R.E. 613(a). Further, a prior inconsistent statement may be offered not only to impeach a witness, but also as substantive evidence if it meets additional requirements of reliability. ***Commonwealth v. Lively***, . . . 610 A.2d 7, 9-10 ([Pa.] 1992); P.R.E. 803.1. The test is a two-part inquiry: 1) whether the statement is given under reliable circumstances; and 2) whether the declarant is available for cross-examination. With respect to the first prong, that the statement is given under reliable circumstances, our supreme court has deemed reliable only certain statements; among them is a statement that is "reduced to a writing and signed and adopted by the witness." ***Lively***[,]610 A.2d at 10. ***See also*** P.R.E. 803.1(1). With respect to the second prong, cross-examination, the inconsistent statement itself must be the subject of the cross-examination in order to satisfy the test.

***Commonwealth v. Carmody***, 799 A.2d 143, 148 (Pa. Super. 2002) (some citations omitted).

Here, the trial court observed that Hayes' trial testimony contained numerous inconsistencies with his prior statement to police. For example, at trial Hayes stated he saw the Victim between 8:00 and 8:15 p.m. on the night of the shooting, but in his prior statement to police, he stated he saw the Victim at 11:00 p.m. Trial Ct. Supplemental Op. at 3, *citing* N.T., 4/4/19, at 177-87, 202. We further note Hayes extensively denied the truth of many other statements given to police, including what the Victim told Hayes he was doing prior to the shooting, who informed Hayes the Victim was shot, when Hayes learned the Victim was shot, and what Hayes did after learning the Victim was shot. ***See*** N.T., 4/4/19, at 206, 210, 213-17. Indeed, on appeal,

Appellant's brief acknowledges that "[H]ayes testified to several inconsistencies in his statement including how long he was at the house before being taken to Homicide." Appellant's Brief at 9. Thus, we would not disturb the trial court's admission of Hayes' signed police statement as a prior inconsistent statement, even if not waived. *See* Pa.R.E. 803(1)(B); *Young*, 989 A.2d at 924; *Carmody*, 799 A.2d at 148.

In his Rule 1925(b) statement, Appellant complained that the trial court abused its discretion in sentencing him above the guidelines and not providing adequate reasons for said departure. However, Appellant subsequently abandons this claim by agreeing the trial court did **not** abuse its discretion. Appellant's Brief at 9-10 (emphasis added).

As we conclude no relief is due on Appellant's claims, we affirm the judgment of sentence.

Judgment of sentence affirmed.


Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/23/2021